# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-03077-SKC-STV

LOREN QUALLS,

    Plaintiff,

v.

FRONTIER AIRLINES, INC.,

    Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Chief Magistrate Judge Scott T. Varholak

This matter comes before the Court on Defendant's Motion to Dismiss (the "Motion"). [#14]  The Motion has been referred to this Court. [#20]  This Court has carefully considered the Motion and related briefing, the entire case file and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motion.  For the following reasons, the Court respectfully **RECOMMENDS** that the Motion be **GRANTED IN PART** and **DENIED IN PART**.

I.    **BACKGROUND**[1]

This action arises from Plaintiff's attempt to board a connecting flight operated by Defendant Frontier Airlines on June 11, 2025, at Harry Reid International Airport in Las

---

[1] The facts are drawn from the allegations in Plaintiff's Complaint (the "Complaint") [#1], which must be taken as true when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  *Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013) (citing *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011)).  The Court also considers Defendant's exhibit [#14-1] concerning the Contract of Carriage as this is referred to in Plaintiff's Complaint and is central to Plaintiff's claims.  *See Tellabs, Inc. v.*

Vegas, Nevada.  [#1 at 4]  Plaintiff alleges that he traveled on Frontier from San Francisco International Airport to Cleveland Hopkins International Airport, with a scheduled layover in Las Vegas.  [*Id*.]  Plaintiff arrived in Las Vegas at approximately 1:00 p.m. and was scheduled to depart on a connecting flight at approximately 11:00 p.m.  [*Id*.]

Plaintiff alleges that he traveled with a personal item and a small carry-on bag, both of which complied with Frontier's published size and weight requirements and were accepted without issue on the initial segment of travel.  [*Id*.]  Plaintiff arrived at the gate several hours before boarding.  [*Id*.]  When boarding commenced, Plaintiff alleges that he attempted to board as a Priority and Elite status holder, but Frontier gate agents denied him priority boarding and demanded payment of a $100 fee for a second bag because Plaintiff did not have a carry-on allowance.  [*Id*.]  Plaintiff contends that the demand was unjustified because his bags complied with Frontier's policies and had been accepted on the prior flight.  [*Id*.]

According to the Complaint, Plaintiff requested to speak with a supervisor but was refused.  [*Id*.]  Plaintiff alleges that, in an effort to comply and board the flight, he discarded a carry-on bag valued at approximately $300.  [*Id*.]  Despite doing so, Plaintiff was denied boarding because the interaction had taken too long.  [*Id*.]  Plaintiff alleges that the Frontier agents laughed and mocked the situation and ultimately rebooked Plaintiff on a Frontier flight departing the following morning.  [*Id*.]  Plaintiff remained in the airport

---

*Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (holding a court "must consider the complaint in its entirety . . . [and] documents incorporated into the complaint by reference").  The Court does not consider any additional factual allegations raised by Plaintiff in briefing.  *See In re Qwest Commc'ns Int'l, Inc.*, 396 F. Supp. 2d 1178, 1203 (D. Colo. 2004) (disregarding additional factual claims asserted in briefing on a motion to dismiss, explaining that "plaintiffs may not effectively amend their Complaint by alleging new facts in their response to a motion to dismiss").

overnight. [*Id.*] Plaintiff alleges financial loss, emotional distress, loss of personal property, and employment-related consequences as a result of Defendant's conduct. [*Id.*]

Plaintiff filed this action on October 1, 2025, asserting six causes of action: (1) breach of contract; (2) negligence; (3) conversion; (4) intentional infliction of emotional distress ("IIED"); (5) tortious interference with economic advantage/employment; and (6) violation of federal aviation regulations and unfair trade practices. [*Id.*] Defendant filed the instant Motion on November 6, 2025 seeking dismissal of Plaintiff's Complaint. [#14] Plaintiff responded to the Motion [#17] and Defendant has replied [#21]. Plaintiff filed a Motion to for Leave to File a Sur-reply, which was denied by the Court. [## 22, 24]

## II.  STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (alteration in original) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). Nonetheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The ultimate duty of the court is to "determine whether the complaint sufficiently alleged facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d

1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)). "The Haines rule applies to all proceedings involving a pro se litigant." *Id*. at 1110 n.3. The Court, however, cannot be a pro se litigant's advocate. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008). Moreover, pro se parties must "follow the same rules of procedure that govern other litigants." *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (quoting *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992)).

### III.   ANALYSIS

Defendant moves to dismiss all six claims, arguing that the Complaint contains only conclusory allegations and Plaintiff fails to plead facts sufficient to state a plausible claim for relief. [#14 at 1, 3] Specifically, Defendant claims that Plaintiff has not identified any provision of the Contract of Carriage that was breached [*id*. at 3-4]; that the negligence claim is barred by the economic loss rule and lacks an independent duty [*id*. at 4-5]; that the conversion claim fails because Defendant never exercised dominion or control over Plaintiff's property [*id*. at 5-6]; that the alleged conduct is not sufficiently extreme or outrageous to support an IIED claim [*id*. at 6-7]; that Plaintiff has not pleaded facts showing intentional interference with a business relationship [*id*. at 7]; and that the cited federal regulations do not apply to Plaintiff's allegations [*id*. at 7-8]. The Court addresses each argument in turn.

#### A.   Claim One: Breach of Contract

Plaintiff asserts that he complied with Defendant's baggage size limits and boarding requirements and that Defendant nonetheless denied him boarding in violation of the Contract of Carriage. [#1 at 4] Under Colorado Law, a breach of contract claim requires: (1) existence of a contract; (2) performance by the plaintiff; (3) failure to perform

4

by the defendant; and (4) damages suffered as a result.  *Shell v. Am. Fam. Rights Ass'n*, 899 F. Supp. 2d 1035, 1058 (D. Colo. 2012) (citing *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992)).  Defendant argues that Plaintiff fails to plead failure to perform by Defendant.  [#14 at 4]  Specifically, Defendant argues that the flight attendants denied Plaintiff access to the flight because Plaintiff was in violation of the baggage fee policy, Plaintiff therefore needed to pay an additional $100 for his second bag which he refused to do, and Defendant "cannot be faulted for Plaintiff's subsequent actions of allegedly disposing of his own carry-on bag and missing the boarding process."[2]  [*Id.*]  The Court disagrees.

Defendant's argument asks the Court to ignore the well-pleaded factual allegations raised in Plaintiff's Complaint.  Specifically, Defendant argues that the flight attendants denied Plaintiff access to the flight because Plaintiff "was in violation of the baggage fee policy."  [#14 at 4]  That policy provides that passengers are permitted one personal item and one carry-on item, provided both items fit within certain specifications.  [#14-1 at 14]  And Plaintiff alleges that his two bags were "both compliant with [Defendant's] size and weight policies."  [#1 at 4]  Plaintiff supports this allegation with the additional fact that he was permitted to carry both bags upon his flight from San Francisco to Las Vegas, thereby making further plausible the allegations that his bags were compliant with Defendant's

---

[2] Without elaboration, Defendant further states: "Additionally, Plaintiff was ultimately transported to his destination by [Defendant]."  [*Id.*]  But this argument is not developed in the Motion and the Court need not consider undeveloped arguments.  *Henard v. Albers*, No. 21-cv-3123-WJM-MDB, 2025 WL 3470309, at *2 (D. Colo. Dec. 3, 2025) (collecting cases).  And though Defendant's reply provides slightly more legal support for this argument [#21 at 1-2], "arguments raised for the first time in a reply brief are generally deemed waived."  *United States v. Harrell*, 642 F.3d 907, 918 (10th Cir. 2019).

5

size regulations. [*Id.*] Yet Defendant refused to allow Plaintiff to board despite Plaintiff's alleged compliance with Defendant's size and weight limits for baggage.

It appears that, pursuant to the Contract of Carraige, Defendant may charge a fee for a carry-on bag even if the bag complies with weight and size limitations, depending on the type of ticket purchased. [#14-1 at 14] Liberally construed, however, Plaintiff's Complaint plausibly alleges that his ticket did not require the additional fee. [#1 at 4 (indicating that Plaintiff "holds both Priority and Elite status"); *id.* (asserting that the gate agent "*falsely* claim[ed] that Plaintiff did not have a carry-on allowance" (emphasis added))] And though Defendant could have attached Plaintiff's actual ticket to demonstrate that his ticket permitted Defendant to charge the baggage fee, *Tellabs, Inc.*, 551 U.S. at 322 (holding a court may consider documents incorporated into the complaint by reference), Defendant's Motion does not do so.

Thus, Plaintiff has plausibly alleged that Defendant breached the Contract of Carraige by denying Plaintiff boarding access despite Plaintiff's compliance with Defendant's baggage policies. Accordingly, the Court respectfully RECOMMENDS that the Motion be DENIED as to Plaintiff's first claim.

    **B.**    **Claim Two: Negligence**

Next, Plaintiff contends that Defendant owed him a duty of care as a paying passenger and breached that duty through conduct that foreseeably caused harm, including loss of property, missed travel connections, and adverse employment consequences. [#1 at 4] Under Colorado law, a plaintiff asserting negligence must plausibly allege: (1) the existence of a legal duty owed by the defendant to the plaintiff; (2) breach of that duty; (3) injury to the plaintiff; and (4) the defendant's breach caused

that injury. *N.M ex rel. Lopez v. Trujillo*, 397 P.3d 370, 374 (Colo. 2017) (citation omitted). The threshold issue in any negligence action is whether the defendant owed a legal duty to protect the plaintiff against the injury alleged. *HealthONE v. Rodriguez*, 50 P.3d 879, 888 (Colo. 2002)). The existence of a duty is a question of law for the Court. *Trujillo*, 397 P.3d at 374.

Defendant argues that Plaintiff's negligence claim fails because Plaintiff has not alleged facts sufficient to show Defendant owed Plaintiff a duty, and Plaintiff's claim arises entirely from the contractual relationship and is thus barred by Colorado's economic loss rule. [#14 at 4-5] In his Response, Plaintiff invokes 14 C.F.R. § 91.13(a) and 49 U.S.C. § 40120(c) of the Federal Aviation Act to argue an independent duty of care imposed on Defendant. [#17 at ¶¶ 5-6] But neither of these provisions have anything to do with Defendant's alleged duty here—allowing Plaintiff to board without paying a second baggage fee—and they certainly do not impose such a duty upon Defendant. Thus, because Plaintiff has not plausibly alleged that Defendant breached a duty owed to Plaintiff separate from the obligations under the Contract of Carraige, Plaintiff's negligence claim fails. Accordingly, the Court respectfully RECOMMENDS that the Motion be GRANTED as to Plaintiff's second claim.

### C. Claim Three: Conversion

Next, Plaintiff alleges that Defendant wrongfully exercised control over his property by compelling him, under duress, to abandon it. [#1 at 4] Defendant argues that Plaintiff's conversion claim fails because Plaintiff admits he discarded the bag himself and does not allege that Defendant ever exercised dominion or control over it. [#14 at 5-6] The Court agrees.

7

"Conversion under Colorado law is 'any distinct, unauthorized act of dominion or ownership exercised by one person over personal property belonging to another.'" *Scott v. Scott*, 428 P.3d 626, 634 (Colo. App. 2018) (quoting *Itin v. Ungar*, 17 P.3d 129, 135 n.10 (Colo. 2000)).  "To state a claim for conversion, [Plaintiff] was required to allege in [his] complaint that '(i) [Defendant] exercised dominion or control over property; (ii) that property belonged to [Plaintiff]; (iii) [Defendant's] exercise of control was unauthorized; (iv) [Plaintiff] demanded return of the property; and (v) [Defendant] refused to return it.'" *Id*. (quoting *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, 863 F. Supp. 2d 1066, 1081 (D. Colo. 2012)).  "Unlike civil theft, conversion does not require that the converter act with the specific intent to permanently deprive the owner of his or her property." *Id*. (citing *Itin*, 17 P.3d at 135 n.10) (emphasis omitted).  And "even a good faith recipient of funds who receives the money without knowledge that it belonged to another can be held liable for conversion." *Id*.  Thus, a "person in lawful possession of property may commit conversion when he or she refuses the legal owner's demand for return of the property." *Id*. (citing *Davis v. Am. Nat'l Bank of Denver*, 367 P.2d 325, 326 (1961)).

Here, the Complaint alleges that, after discussing the baggage allowance with gate agents and refusing to pay the baggage fee, Plaintiff discarded his bag. [#1 at 4]  Plaintiff does not allege that Defendant's gate agents seized, detained, or disposed of his property.  Nor has Plaintiff alleged that he demanded a return of the bag and Defendant refused to return it.[3]  On the face of the Complaint, therefore, Plaintiff has not plausibly alleged several elements of his conversion claim.

---

[3] Defendant's Motion does not challenge the Fourth or Fifth elements of Plaintiff's claim.  [#14 at 5-6]  As a result, this Court would ordinarily not consider those elements.  But Plaintiff has been granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. §

Plaintiff attempts to avoid this conclusion by arguing that he discarded the bag under duress and that actions taken under duress are involuntary and therefore establish constructive possession by Defendant. [#17 at 2] Initially, this argument does not address the demand for return or refusal to return elements of Plaintiff's conversion claim. The failure to plausibly allege those elements, in and of itself, justifies dismissing Plaintiff's conversion claim. But even if the Court were to ignore that problem, Plaintiff's allegations do not rise to the level of duress. The Complaint alleges that a Frontier gate agent demanded a $100 fee for Plaintiff's second bag, and that, rather than pay the fee, Plaintiff discarded his carry-on bag "under duress." [#1 at 4] But allegations of duress require more than the exertion of pressure:

> To establish duress as ground for the avoidance of a contract, conveyance, or other act, it is not alone sufficient to show the exertion of pressure by threats or even by physical compulsion, but it must also clearly appear that the force or threats employed actually *subjugated the mind and will of the person against whom they were directed, and were thus the sole and efficient cause of the action which it took*.

*Bennett v. Coors Brewing Co.*, 189 F.3d 1221, 1231 (10th Cir. 1999) (emphasis in original) (quotation omitted). Plaintiff's allegation that he would need to pay a $100 fee to carry on the bag simply does not rise to the level of threats necessary to show that Plaintiff's will was subjugated, thereby forcing Plaintiff to abandon the bag. Thus, the Complaint does

---

1915. [#4] And 28 U.S.C. § 1915(e)(2) requires a court to dismiss *sua sponte* an action at any time if the action is frivolous, fails to state a claim for relief, or if the plaintiff seeks monetary relief from a defendant who is immune from such relief. The Court applies the same legal standard applied to a motion filed pursuant to Rule 12(b)(6) to determine whether an action fails to state a claim pursuant to Section 1915(e)(2)—*i.e.*, whether "the specific allegations in the complaint . . . plausibly support a legal claim for relief." *Hooks v. Atoki*, 983 F.3d 1193, 1200 (10th Cir. 2020) (quotation omitted). Because the Complaint clearly and obviously fails to allege the fourth or fifth elements of Plaintiff's conversion claim, the Court independently considers such elements as required by Section 1915(e)(2).

not plausibly allege constructive possession by Defendant. Accordingly, the Court respectfully RECOMMENDS that the Motion be GRANTED as to Plaintiff's third claim.

### D. Claim Four: Intentional Infliction of Emotional Distress

Next, Plaintiff alleges that Defendant forced him to dispose of his property and denied him boarding, which constituted extreme and outrageous conduct that intentionally or recklessly caused him severe emotional distress. [#1 at 4] Defendant argues that the alleged conduct does not meet the high threshold required to establish extreme and outrageous conduct. [#14 at 6-7] The Court agrees.

In Colorado, "[t]he elements of the tort of intentional infliction of emotional distress, otherwise known as 'outrageous conduct,' are (1) the defendant engaged in extreme and outrageous conduct; (2) recklessly or with the intent of causing the plaintiff severe emotional distress; (3) causing the plaintiff to suffer severe emotional distress." *Lee v. Colo. Times, Inc.*, 222 P.3d 957, 966-67 (Colo. App. 2009) (Dailey, J., concurring in part and dissenting in part); *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999). Outrageous conduct has been defined as conduct:

> [S]o outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and him to exclaim, "Outrageous!"

*Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1350 (Colo. 1988) (quoting *Rugg v. McCarty*, 476 P.2d 753, 756 (Colo. 1970)). "The level of outrageousness required for conduct to create liability for [IIED] is extremely high." *McCarty v. Kaiser-Hill Co., L.L.C.*, 15 P.3d 1122, 1126 (Colo. App. 2000). "Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities are insufficient." *Pearson v. Kancilia*, 70 P.3d 594,

10

597 (Colo. App. 2003). "Although the jury ultimately determines whether conduct is outrageous," *Lee,* 222 P.3d at 963, "the court should determine in the first instance whether reasonable people may differ as to whether the conduct of the defendant has been sufficiently extreme and outrageous to result in liability," *Churchey*, 759 P.2d at 1350 (quotation omitted).

Here, the conduct described—disputes over baggage fees, refusal to escalate to a supervisor, denial of boarding, and gate agents laughing at and mocking the situation—while unpleasant, does not rise to the level of extreme and outrageous behavior necessary to sustain a claim for intentional infliction of emotional distress. Accordingly, the Court respectfully RECOMMENDS that the Motion be GRANTED as to Plaintiff's fourth claim.

### E.  Claim Five: Tortious Interference

Next, Plaintiff claims that because he was not able to board his original flight, he missed a work-related obligation and was disciplined and suspended without pay, suffering lost income and damage to his professional reputation. [#1 at 4] "A claim for tortious interference with current business relations requires plaintiffs to show that the defendant '(1) was aware of the existence of the contract; (2) intended that one of the parties breach the contract; (3) induced the party to breach the contract or make it impossible for him or her to perform; and (4) acted "improperly" in causing the breach.'" *AMG Nat'l Corp. v. Wright*, No. 20-cv-02857-PAB-KLM, 2021 WL 4170459, at *10 (quoting *Hertz v. Luzenac Grp.*, 576 F.3d 1103, 1118 (10th Cir. 2009)). Here, the Complaint alleges that Plaintiff missed a "work-related obligation" and suffered disciplinary consequences. [#1 at 4] But it does not identify the employer, the nature of the obligation, or facts

11

permitting a reasonable inference that Defendant was aware of the work-related obligation, let alone that Defendant acted with the intent to interfere with Plaintiff's employment relationship.[4]  As a result, Plaintiff has not plausibly pled a tortious interference claim and the Court respectfully RECOMMENDS that the Motion be GRANTED as to Plaintiff's fifth claim.

### F.  Claim Six: Violation of Federal Aviation Regulations and Unfair Trade Practices

Finally, Plaintiff alleges that Defendant's conduct violated federal consumer protection laws governing airline conduct under 14 C.F.R. § 250 *et seq.* constituting unfair and deceptive practices.  [#1 at 4]  Federal regulations 14 C.F.R. § 250 *et seq.* govern airline compensation and procedures for passengers who are involuntarily denied boarding due to overbooking.  The regulations establish airlines' obligations to provide notice, compensation, and alternative transportation in such circumstances.  *See* 14 C.F.R. § 250.9.  It does not apply to the facts alleged here—disputes over baggage fees, voluntary relinquishment of property, or other routine airline policies unrelated to overbooking.  Moreover, courts have consistently held that 14 C.F.R. § 250 *et seq.* does not create a private right of action, and enforcement of its provisions is limited to the

---

[4] Defendant's Motion does not challenge Defendant's awareness of the business relationship or Defendant's intent to interfere with that relationship. [#14 at 7]  Instead, Defendant waits until its reply to make this challenge. [#21 at 6-7]  And as previously explained, "arguments raised for the first time in a reply brief are generally deemed waived."  *Harrell*, 642 F.3d at 918.  Nonetheless, because Plaintiff proceeds in forma pauperis, and because it is obvious from the Complaint that Plaintiff has failed to allege knowledge of the business relationship and intentional interference, the Court examines these two elements pursuant to its obligations under Section 1915(e)(2). *See supra* n. 3.  And though Plaintiff's proposed sur-reply argues that Plaintiff need not allege motive [#22-1 at 4], even that sur-reply does not address the failure to allege awareness of the contract or intent [*id.*].

Department of Transportation.  See *Yakub v. Qatar Airways Grp. (Q.C.S.C)*, No. 25-CV-04142-JCS, 2025 WL 1927599, at *6 (N.D. Cal. July 14, 2025) (citing *Kalick v. Nw. Airlines Corp.*, No. CIV. 08-2972JBSAMD, 2009 WL 2448522, at *4 (D.N.J. Aug. 7, 2009) ("with regard to the separate issue of whether the regulations [in 14 C.F.R. § 250.1, *et seq.*] not only permit a state contract law action for being bumped, but affirmatively provide for a federal right of action, whether for bumping or anything else, courts within and outside this Circuit have consistently answered this question in the negative" (quotation omitted) (collecting cases)), *aff'd*, 372 F. App'x 317 (3d Cir. 2010)).  Accordingly, Plaintiff cannot base a private claim for unfair or deceptive practices on this regulation.  Accordingly, the Court respectfully RECOMMENDS that the Motion be GRANTED as to Plaintiff's sixth claim.

IV.   **CONCLUSION**

For the foregoing reasons, the Court respectfully **RECOMMENDS** that Defendant's Motion to Dismiss [#71] be **GRANTED** with respect to Plaintiff's second, third, fourth, fifth, and sixth claim, but **DENIED** with respect to Plaintiff's first claim.[5]

---

[5] Within fourteen days after service of a copy of this Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings of fact, legal conclusions, and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Griego v. Padilla (In re Griego)*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review." *United States v. 2121 East 30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings of fact, legal conclusions, and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings of fact, legal conclusions, and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (holding that the district court's decision to review magistrate judge's

DATED:  February 19, 2026                          BY THE COURT:

s/Scott T. Varholak  
Chief United States Magistrate Judge

---

recommendation *de novo* despite lack of an objection does not preclude application of "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (finding that cross-claimant waived right to appeal certain portions of magistrate judge's order by failing to object to those portions); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (finding that plaintiffs waived their right to appeal the magistrate judge's ruling by failing to file objections).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (holding that firm waiver rule does not apply when the interests of justice require review).

14